IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **ASBURY AUTOMOTIVE ST. LOUIS, LLC** )<br>**D/B/A PLAZA MOTOR COMPANY**, )<br> )<br>       Plaintiff, )<br> )<br>v. )<br> )<br>**TRAVERS AUTOMOTIVE GROUP, LLC**, )<br> )<br>Serve:    Brian Travers )<br>           Registered Agent )<br>           10611 County View )<br>           Creve Coeur, MO 63141 )<br> )<br>and )<br> )<br>**JASON CATLIN**, )<br> )<br>Serve:    Jason Catlin )<br>           954 Chartrand Ct )<br>           Ballwin, MO 63011 )<br> )<br>       Defendants. ) | Case No. 4:14-cv-1796 |

**COMPLAINT**

**COMES NOW** Plaintiff Asbury Automotive St. Louis, LLC d/b/a Plaza Motor Company, by and through counsel, and for its Complaint against Defendants Travers Automotive Group, LLC and Jason Catlin states as follows:

**PARTIES, JURISDICTION, AND VENUE**

**1.** Plaintiff Asbury Automotive St. Louis, LLC d/b/a Plaza Motor Company ("Asbury"), is, and at all times material hereto was, a limited liability company organized and existing under the laws of the Delaware with its principal place of business in Duluth, Georgia. Asbury regularly conducts business in the State of Missouri.

2. Defendant Travers Automotive Group ("Travers"), is, and at all times material hereto was, a limited liability company organized and existing under the laws of the State of Missouri with its principal place of business in St. Louis, Missouri.

3. Defendant Jason Catlin is a resident of the State of Missouri.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of costs, interests, and attorney's fees, and there exists complete diversity of citizenship.

5. Venue is proper in the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1391(a) because Defendant Travers resides in this district and all tortious and unlawful acts giving rise to this lawsuit occurred in this district.

### GENERAL ALLEGATIONS

6. While employed by Asbury, a confidential relationship existed between Defendant Catlin and Asbury in that there was an express understanding that Defendant Catlin was receiving confidential information from Asbury and Defendant Catlin acquired the information in such a way that he knew or should have known of its confidential nature.

7. While employed by Asbury, Defendant Catlin had possession of and access to Asbury's confidential business information and trade secrets, including, but not limited to, customer lists, records and a customer data base.

8. Defendant Catlin also had substantial and direct contact with many of Asbury's customers. His customer contact included meetings, emails and telephone conversations with current customers of Asbury regarding their existing relationship with Asbury. Defendant Catlin also met and regularly spoke to prospective customers regarding services and products that Asbury could provide to them.

9. Asbury treats its trade secrets and confidential information as highly confidential. Such information has substantial commercial value, and is not readily accessible to Asbury's competitors.

### DEFENDANT CATLIN'S MPP AGREEMENT AND AGREEMENT TO COMPLY WITH ASBURY'S HANDBOOK

10. On or about January 6, 2013, Defendant Catlin entered into a Manager Pay Plan agreement containing a confidentiality provision and a non-solicitation provision ("MPP Agreement"). A true and correct copy of the MPP Agreement is attached to the original Complaint in this matter as **Exhibit A**, and is incorporated herein by reference as though fully set forth herein.

11. Under the MPP Agreement, Defendant Catlin agreed as follows:

> 5. Non Solicitation: Commencing on the date hereof and continuing for two years following termination of employment with the Company for any reason, Employee will not directly or indirectly, on Employee's on behalf or for another Employer, induce or attempt to induce any of the Company's employees or independent contractors to leave their employment or engagement by the Company.

* * *

> 8. Confidentiality: You agree that following any termination of employment for any reason, you will not directly or indirectly use any confidential information of the Asbury Automotive Group or any of its subsidiaries (the "Company") including records, files, customer information and customer lists.

12. On or about January 1, 2014, as a condition of his continued employment, Defendant Catlin acknowledged and agreed to abide by the terms of Asbury's Handbook of Plaza Motor Company ("Handbook"). A true and correct copy of the pertinent sections of the Handbook are attached to the original Complaint in this matter as **Exhibit B**.

13. Among the terms contained in the Handbook is an agreement to safeguard Asbury's confidential business information:

> Dealership computers, telephones and internet are intended for company business only. All information on these systems is the sole and exclusive property of this Dealership. All information on Dealership computers is the sole and exclusive property of the Dealership.
>
> **COMPUTERS**
>
> Our computers contain a wide range of confidential information concerning our business including customer lists. This information is considered a valuable company

4

asset. In addition, our computers contain confidential non-public information concerning our customers. Because we are required by federal law to carefully safeguard our customers' information, employees are not permitted to bring personal computers onto our premises or to load any customer information onto a PDA, flash drive, "memory stick" or other electronic device. Anyone who removes company or customer information from our premises or uses the information to benefit any person or entity other than our Dealership is guilty of theft.

**CONFIDENTIAL INFORMATION**

In performing your job, you may come into contact with or have access to a wide variety of customer information. All personal information that we obtain concerning a customer whether directly from the customer or through a credit report is to be treated as <u>strictly confidential</u> and may only be used for the legitimate business purposes directly related to our sale or lease of a vehicle. Federal law and good business practices require that we carefully safeguard this information from disclosure to any unauthorized person whether in this Company or outside.

\* \* \*

Financial and other information related to our business operations is also to be treated as strictly confidential. Such information includes, but is not limited to, our monthly financial statements, current and historical sales figures, CSI data, employee and manager wage information, information concerning current and prospective customers and lease customers, inventory lists, vehicle invoices, contracts and other financial arrangements with our vendors and finance sources, information concerning our performance relative to other Companies, and information related to our relationship with our manufacturers. This information may not be disclosed to any other Company employee except on a "need to know" basis. Nor may it be disclosed to any person or entity outside of the Company. All such information, whether in electronic or paper format, must be returned promptly when you leave our employment. Failing to return this information, removing it from our premises or using it while working for another employer is considered theft of Company property and will be dealt with as such.

**CONFLICT OF INTEREST**

Our Code of Business Conduct and Ethics discourages any self-dealing by our employees and requires that all actions

6

taken by our employees be in the best interest of the Company.  The Conflict of Interest Policy provide examples of self-dealing or other actions by an employee that would be considered a conflict of interest, including the hiring of family members to work for the Company, investing or funding a supplier, customer, business partner or competitor of Asbury or pursuing a business opportunity discovered while working for Asbury.

14. On or about August 12, 2014, Defendant Catlin's employment with Asbury was terminated.  He then accepted employment with Defendant Travers.  Located less than eight miles away, Defendant Travers is a direct competitor with Asbury in the fierce and ultra-competitive St. Louis market for high-end luxury vehicles.

15. However, before his termination, Defendant Catlin downloaded confidential customer information and customer lists to an external hard drive.

16. Since his termination, Defendant Catlin has solicited Asbury's employees to leave their employment with Asbury, including Cory Laneman, Jay Mehta, Paul Parker, Kizzy Sanders, Bryon Stolze, James Steele, Jr., Mary Sheeley, and Kendall Spencer.  Defendants are also attempting to infiltrate Asubry's employee base by their unlawful solicitation.  In fact, Defendant Catlin and Defendant Travers have unlawfully and vigorously solicited Daniel Branca and Nerijus Vaitulevicius who are current employees of Asbury.  The

7

damage continues spread as Defendants use former Asbury employees to unlawfully solicit Asbury's current employees.

17. On October 3, 2014, Asbury wrote to Defendant Catlin a cease and desist letter reminding him of his obligations under the Confidentiality Agreement, specifically including his obligation to return all confidential information, including customer information and customer lists and information, to Asbury. A true and correct copy of the October 3, 2014 letter to Defendant Catlin is attached to the original Complaint in this matter as **Exhibit C**.

18. On October 8, 2014, Asbury again wrote to Defendant Catlin and also Defendant Travers a cease and desist letter reminding them of Defendant Catlin's obligations under the MPP Agreement, specifically including his obligation to return all confidential information, including customer information and customer lists and information, to Asbury before Friday, October 10, 2014. A true and correct copy of the October 3, 2014 letter to Defendant Catlin is attached to the original Complaint in this matter as **Exhibit D**.

19. To date, Defendant Catlin has failed to respond to Asbury's cease and desist letters.

20. On information and belief, Defendant Travers solicited and received the Asbury's confidential information from Defendant Travers knowing that Defendant Travers was bound by a MPP Agreement with Asbury not to share such confidential information.

8

21. On information and belief, Defendant Travers has shared Asbury's confidential information with Defendant Travers's employees and others outside of the Defendant Travers' place business.

22. On information and belief, Defendant Catlin and Defendant Travers violated Defendant Catlin's MPP Agreement with the express or implied approval, direction and/or consent of Defendant Travers.

## COUNT I
### Breach of the MPP Agreement (Defendant Catlin)

23. The allegations contained in paragraphs 1 through 22 above are incorporated as though fully set out herein.

24. On or about January 6, 2013, Defendant Catlin entered into the MPP Agreement with Asbury containing confidentiality and non-solicitation provisions.

25. Defendant Catlin is now employed by Defendant Travers, a direct competitor of Asbury.

26. Under the MPP Agreement, Defendant Catlin was required to refrain from using confidential information and from soliciting Asbury employees upon his termination of employment.

27. Defendant Catlin has breached the MPP Agreement in that, among other things, he has disclosed confidential information of Asbury to one or more third parties, including Defendant Travers, and solicited, both directly and indirectly, numerous Asbury employees.

28. As a direct and proximate result of Defendant Catlin's breaches of the MPP Agreement, Asbury has suffered damages.

9

**29.** Under the MPP Agreement, Asbury is entitled to, among other things, specific performance requiring the return of the trade secrets, confidential information, materials, and documents and any copies thereof, and enforcement of the non-solicitation provisions.

**30.** Unless Defendant Catlin is ordered to return all trade secrets and confidential information, and refrain from soliciting Asbury employees, there is a substantial likelihood that Asbury will be irreparably injured through the further deprivation of its property and the use and disclosure of its trade secrets.

**WHEREFORE**, Plaintiff Asbury requests that the Court enter judgment in favor of Plaintiff; that the Court enter a preliminary injunction and a permanent injunction against Defendant Catlin's continued possession of trade secrets, confidential information, materials, documents and copies thereof and requiring him to immediately return same to Asbury; that the Court award compensatory damages as a result of Defendant Asbury's breach of the MPP Agreement and his wrongful retention of those materials covered by the MPP Agreement; and that the Court award Plaintiff Asbury its costs incurred in this action, including reasonable attorneys' fees; and such further relief as the Court deems just and proper.

### COUNT II
**Misappropriation of Trade Secrets under the Missouri Uniform Trade Secrets Act, Section 417.450 *et seq.* of the Missouri Revised Statutes (Defendant Travers and Defendant Catlin)**

**31.** The allegations contained in paragraphs 1 through 30 above are incorporated as if fully set out herein.

32. Asbury has trade secrets and confidential information, including customer information and customer lists, that derive independent economic value from not being generally known to or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and that are the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

33. Due to his positions with Asbury, Defendant Catlin had access to and use of Asbury's trade secrets and confidential information.

34. Trade secret and other confidential information were contained on a computer system that Defendant Catlin has permission to access.

35. Because of Defendant Catlin's failure to immediately return the company's trade secrets and his known disclosure of certain trade secrets, Defendant Catlin has misappropriated Asbury's trade secrets and confidential information and there is a strong likelihood that he will continue to do so.

36. Defendants knew or had reason to know that Defendant Catlin had received the information disclosed to it under circumstances giving rise to a duty to maintain its secrecy, and had been acquired or retained by Defendant Catlin through improper means.

37. By virtue of their wrongful possession of Asbury's trade secrets and confidential information, Defendants are in a position to further disclose such trade secrets and confidential information.

38. All defendants have demonstrated an unwillingness to preserve Asbury's trade secrets and confidential information.

**39.** The trade secrets and confidential information in the possession of Defendants are not stale.  Such information is not generally known to the public or competitors of Asbury and it is not obtainable from other sources. The trade secrets have been developed through the expenditure of significant resources by Asbury, have substantial value to Asbury and would have significant value to Asbury's competitors, including Defendant Travers.

**40.** The Missouri Uniform Trade Secrets Act, Sections 417.450, *et seq.* of the Missouri Revised Statutes provides that "[a]ctual or threatened misappropriation [of trade secrets] may be enjoined"; that a "complainant is entitled to recover damages for misappropriation"; that under appropriate circumstances "the court may award punitive damages"; and that "affirmative acts to protect a trade secret may be compelled by court order."

**41.** Unless Defendants are ordered to: (1) return all trade secrets and confidential information; and (2) cease any use or further disclosure thereof, there is a substantial likelihood that Asbury will be irreparably injured through the deprivation of its property and the use and disclosure of its trade secrets.

**WHEREFORE**, Plaintiff Asbury requests that the Court enter judgment in favor of Plaintiff Asbury; that the Court enter a preliminary injunction and a permanent injunction against defendants preventing them from further misappropriating or using any of Asbury's trade secrets or confidential information; that the Court order the immediate return of any trade secrets or property of Asbury; that the Court award compensatory and punitive damages as a result of Defendants' misappropriations, including both the actual losses

caused by the misappropriations and the unjust enrichment caused by the misappropriations; and that the Court award Plaintiff Asbury its costs incurred in this action, including reasonable attorneys' fees; and such further relief as the Court deems just and proper.

### COUNT III
### Misappropriation of Trade Secrets Pursuant to Common Law
### (Defendants Travers and Defendant Catlin)

42. The allegations contained in paragraphs 1 through 41 above are incorporated as if fully set out herein.

43. The information, trade secrets and other confidential information provided by Asbury to Defendant Catlin during his period of employment constituted trade secrets and confidential information.

44. Defendant Catlin, through his wrongful retention of trade secrets and confidential information from Asbury, including from the computer system, has misappropriated Asbury's trade secrets.

45. On information and belief, Defendants, by virtue of their solicitation, receipt, retention and further disclosure of the confidential information and trade secrets, have misappropriated Asbury's trade secrets.

46. Asbury has been damaged by Defendants' misappropriation of Asbury's trade secrets and confidential information.

47. Unless an injunction is issued ordering return of such information, there is a strong likelihood that defendants will further misappropriate Asbury's trade secrets and confidential information.

**48.** Unless Defendants are ordered to return all trade secrets and confidential information, there is a substantial likelihood that Asbury will be irreparably injured through the deprivation of its property and the use and disclosure of its trade secrets.

**WHEREFORE**, Plaintiff Asbury requests that the Court enter judgment in favor of Plaintiff Asbury; that the Court enter a preliminary injunction and a permanent injunction against Defendants preventing them from using or disclosing any of Asbury's trade secrets or confidential information; that the Court order the immediate return of the trade secrets and other confidential information; that the Court award compensatory and punitive damages as a result of Defendants' misappropriation, including both the actual losses caused by the misappropriation and the unjust enrichment caused by the misappropriation; and that the Court award Plaintiff Asbury its costs incurred in this action, including reasonable attorneys' fees; and for such further relief as the Court deems just and proper.

### COUNT IV
### Missouri Computer Tampering Act
### (Defendant Travers and Defendant Catlin)

**49.** The allegations contained in paragraphs 1 through 48 above are incorporated as if fully set out herein.

**50.** The computer used by Defendant Catlin while he was employed by Asbury, as well as the Asbury information contained on it, were and are owned by Asbury.

**51.** By their conduct described above, defendants have taken and disclosed Asbury's information residing on a Asbury's computer system, have accessed a Asbury's computer system, to intentionally examine information about another person, and have received, retained, used and disclosed Asbury's data obtained in violation of Section 569.095.1 of the Missouri Revised Statutes.

**52.** Defendants' conduct was knowing, without authorization from Asbury and without reasonable grounds to believe that Asbury had authorized such conduct. In fact, by virtue of their familiarity with Asbury's Confidentiality Agreement and Business Policies Manual, Defendants knew or should have known that their conduct was expressly prohibited by Asbury.

**53.** As a direct and proximate result of Defendants' violations of the Missouri Computer Tampering Act, Asbury has suffered damages.

**WHEREFORE**, Plaintiff Asbury request that the Court enter judgment in favor of Plaintiff Asbury; that the Court award compensatory damages as a result of Defendants' violations of the Missouri Computer Tampering Act, including costs associated with forensic examination of computer storage media to which Asbury's information was transferred; and that the Court award Plaintiff Asbury its costs incurred in this action, including reasonable attorneys' fees; and such further relief as the Court deems just and proper.

## COUNT V
### Conversion
### (Defendants Travers and Defendant Catlin)

**54.** The allegations contained in paragraphs 1 through 54 above are incorporated as if fully set out herein.

**55** Asbury was and is the rightful owner of all customer information, trade secrets and other confidential information that Defendant Catlin acquired during his period of employment.

**56** Without permission, Defendant Catlin transferred trade secrets and confidential information from Asbury, including from the computer system, to Defendant Travers for use in soliciting Asbury's customers.

**57.** On information and belief, Defendants is in possession of, and is using confidential information and trade secrets, including solicitation, receipt, retention and further disclosure of the confidential information and trade secret.  Under the MPP and the Handbook, the confidential information was to remain with Asbury.

**58.** Defendants have no right to, and are improperly using, the confidential information and trade secrets.

**59.** Despite Asbury's requests, Defendants have intentionally failed to return possession of the confidential information and trade secrets, and computer data.

**60.** As a direct and proximate result of Defendants' conversion in refusing to return the confidential information and trade secrets, and computer

16

data, Asbury has suffered, and will continue to suffer damages, including loss of profits, loss of market share and damage to its reputation and goodwill.

**WHEREFORE**, Plaintiff Asbury requests that the Court enter judgment in favor of Plaintiff Asbury; that the Court enter a preliminary injunction and a permanent injunction against Defendants preventing them from using or disclosing any of Asbury's trade secrets or confidential information; that the Court order the immediate return of the trade secrets and other confidential information, and computer data; that the Court award compensatory and punitive damages as a result of Defendants' misappropriation, including both the actual losses caused by the misappropriation and the unjust enrichment caused by the misappropriation; and that the Court award Plaintiff Asbury its costs incurred in this action, including reasonable attorneys' fees; and for such further relief as the Court deems just and proper.

## COUNT VI
### Tortious Interference with a Contract
### (Defendants Travers)

**61.** The allegations contained in paragraphs 1 through 60 above are incorporated as if fully set out herein.

**62.** Under the MPP agreement, Asbury and Defendant Catlin had a valid and enforceable contract with Defendant Catlin that required Defendant Catlin to refrain from using confidential information to solicit customers and from soliciting Asbury employees upon his termination of employment.

**63.** Defendant Travers, acting by and through its employees, knew of the MPP and was aware of the provisions prohibiting Defendant Catlin from

using confidential information to solicit customers and from soliciting Asbury employees upon his termination of employment.

64. Defendant Travers solicited Defendant Catlin to disclose confidential information to solicit customers and to solicit Asbury employees.

65. As a result of Defendant Travers' actions, Defendant Catlin breached the MPP.

66. Defendant Travers induced Defendant Catlin to breach the MPP using wrongful means in violation of the Missouri Trade Secrets Act and Missouri common law.

67. As a result of Defendant Travers' tortious interference with the MPP, Asbury has been damaged.

68. Defendant Travers' conduct under these circumstances constitutes tortious interference with the MPP.

**WHEREFORE**, Plaintiff Asbury requests that the Court enter judgment in favor of Plaintiff Asbury; that the Court enter a preliminary injunction and a permanent injunction against Defendants preventing them from using or disclosing any of Asbury's trade secrets or confidential information; that the Court order the immediate return of the trade secrets and other confidential information, and computer data; that the Court award compensatory and punitive damages as a result of Defendant Catlin's tortious interference; and that the Court award Plaintiff Asbury its costs incurred in this action, including reasonable attorneys' fees; and for such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Corey L. Kraushaar*
Corey L. Kraushaar #51792
**BROWN & JAMES, P.C**.
800 Market Street, Suite 1100
St. Louis, Missouri 63101
314-242-5257 (Telephone)
314-242-5457 (Facsimile)
ckraushaar@bjpc.com

***Attorney for Plaintiff***
***Asbury Automotive Group***

11979165